NICKOLA v GRAND BLANC TOWNSHIP

1. ZONING—PROPERTY USE—LIMITATIONS—CONSTITUTIONAL LAW—PO-
   LICE POWER.

   People are constitutionally guaranteed any lawful use of their
   real property and limitations on use may not impinge on this
   principle except by exercise of the police power, and that
   exercise must be reasonably related to the public health, safety,
   welfare and morals.

2. ZONING—MOBILE HOME PARK—SINGLE FAMILY RESIDENCE—FIND-
   INGS OF FACT.

   The Court of Appeals will allow the use of land as a mobile home
   park where it cannot see how a mobile home park vis-a-vis
   single family residences can possibly affect a township's morals,
   health or safety on the land in question, where standards of
   sanitation, fire protection, and other general health and safety
   requirements are imposed upon mobile home parks by statute,
   where there is nothing of record to suggest that trailer parks
   create any greater moral problem than any other type of
   structure, access roads and traffic problems would not ensue
   according to the trial court's findings, and where "master plan"
   problems that exist between the permitted use and the use
   sought do not appear of record.

Appeal from Genesee, Donald R. Freeman, J.
Submitted Division 2 May 9, 1973, at Lansing.
(Docket No. 12959.) Decided June 25, 1973. Leave
to appeal granted, 390 Mich —.

Complaint by David Nickola, Jr., and Evelyn
Nickola against the Township of Grand Blanc, its
board of officers, Walter Bollis, and Evelyn Bollis,
to have the township's zoning ordinance declared
unconstitutional as applied to plaintiffs' property

REFERENCES FOR POINTS IN HEADNOTES
[1] 58 Am Jur, Zoning § 43 et seq.
[2] 58 Am Jur, Zoning § 63.

and to allow a mobile home park to be constructed on the property. Judgment for defendants. Plaintiffs appeal. Reversed, and ordinance held unconstitutional as to plaintiffs' property.

*McTaggart, Hermann, Folen & Hamilton* and *Benton, Hicks, Beltz, Behm & Nickola,* for plaintiffs.

*Lyndon J. Lattie,* for defendants.

Before: QUINN, P. J., and BRONSON and O'HARA,* JJ.

O'HARA, J. The real question presented by this appeal is whether zoning in Michigan is a popularity contest to be won by the most organized and vocal of proponents or opponents[1] or whether it is a set of legal principles embodied in some recognizable and dependable case precedent.

We hope it is the latter and we will try to apply those principles as we understand them to the facts in the case at bar.

Plaintiffs are the owners of a 60-acre tract of land in defendant township. The defendants other than the township are its board of officers.

Plaintiffs bought the property in 1962 with the admitted purpose of building and maintaining a mobile home park. At the time of purchase the property was zoned as it presently is, single family residences other than mobile homes. Plaintiffs contend they purchased it upon the representation to them by the township supervisor that rezoning it

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

[1] See number 6 of the trial judge's findings of fact. We note also the pleadings indicate that when the zoning board recommended approval of plaintiff's petition to the township board petitions for recall of the members of the township board of officers were circulated.

for a trailer park would be no problem. This fact is undeterminative of any decisional issue.

However well intentioned and sincere the supervisor may have been, he (assuming he did make the representation) obviously cannot bind the municipality.

In 1963, plaintiffs filed a petition with the township accompanied by a consent thereto by 11 adjacent property owners.[2] No action was taken thereon for two years. Various reasons were advanced for the delay. Among them was the concern that part of the involved land was presumptively to be condemned for highway purposes and the concern of the officials that if it were developed the condemnation damages would be measurably increased. Another reason was the lack of sanitary sewers in the parcel. Again plaintiffs represent that they were led to believe that when these two factors no longer existed rezoning would be granted. We mention this so that prospective purchasers and their counsel be aware of the general unenforceability of such claimed representations. It would be well for purchasers to heed the ancient adage *caveat emptor* in this area of law, and get their rezoning problems adjudicated before purchase and not after.

The briefs of the parties discuss, seek to differentiate and urge reliance upon a host of cases all in apparent conflict. No possible service to trial bench or bar could come from this panel adding its bit of confusion to the litany of conflicting holdings. There simply is no way of reconciling them. Whatever we might say would in no wise affect prior decisions by other panels of this Court. We

---

[2] The consents have no more legal significance (absent some requirement in the ordinance) than do the recall petitions or other expressions of the residents' disapproval.

can follow them, disregard them or distinguish them all to no practical avail. We decide lawsuits. The Supreme Court alone can author opinions binding upon all our panels.

So we go to what we think are the relevant facts in this case. In this we are fortunate because the trial judge favored us with enumerated specific findings of fact. Unless we set them forth verbatim no purpose would be served by discussing our application of law to them. We list them:

"1. An earlier Township Supervisor had suggested this property would be a good site for a mobile home park.

"2. The present value of the park would be quadrupled, if zoned to permit a modern mobile home park, subject to sizable investment being made for improvements for this purpose.

"3. Although there is no large present demand for single family housing in the site at issue, it is located within reasonable proximity of other single family developments and has easy access to the superhighway I-475.

"4. Adjacent property owners include one who has no present plans for developing the piece as a single family development. In the event that the land in question were used as a trailer site, the adjoining property owner would seek the use of its property for high-density purposes.

"5. The property contains municipal sewer and water services which are available to the site as well as access to a main county road.

"6. There has been large expression by citizens of Grand Blanc Township in opposition to rezoning that would permit the plaintiffs to create a trailer park in this site.

"7. There are twenty-three acres of land occupied by mobile home parks in Grand Blanc Township, rezoning has been granted existing parks to permit their enlargement; the existing zoning ordinance of the Township provides for mobile home parks and the proposed land

use plan of the Township contains three-hundred acres of land where mobile home parks will be allowed and this plan has been adopted by the Township Board.

"8. The plaintiff[s] paid approximately $350.00 an acre for their land and at the present time it has a price on the market, under present zoning, of approximately $1,500.00 an acre."

In coming to his legal conclusion based on the foregoing found facts the trial court relied on the test set forth in *Brae Burn, Inc, v Bloomfield Hills,* 350 Mich 425 (1957). He quoted *Brae Burn* as follows:

"[T]he ordinance comes to us clothed with every presumption of validity * * * and it is the burden of the party attacking to prove affirmatively that the ordinance is an arbitrary and unreasonable restriction upon the owner's use of his property. * * * This is not to say, of course, that a local body may with impunity abrogate constitutional restraints. The point is that we require more than a debatable question. We require more than a fair difference of opinion. It must appear that the clause attacked is an arbitrary fiat, a whimsical *ipse dixit,* and that there is no room for a legitimate difference of opinion concerning its reasonableness.

* * *

"We have stressed, heretofore, in these zoning cases, the principle that each case must be judged on its own facts. * * * *The question always remains: As to this property, in this city, under this particular plan (wise or unwise though it may be) can it fairly be said there is not even a debatable question?"* (Emphasis supplied.) pp 432, 433.

His decisional holding was that plaintiffs failed to overcome the *Brae Burn* presumption.[3]

___

[3] In my personal view it cannot be gainsaid that *Brae Burn* has, like a cheese, suffered a good deal from nibbling. "Yes, but" opinions of this Court, of which we must assume the Supreme Court is aware, have introduced a "favored use" doctrine, a "shift of the burden of proceeding with proof" doctrine, "unconstitutional exclusions" excep-

We opt this simple formula which we think is permissible under *Brae Burn.*

1. In this country people are constitutionally guaranteed any lawful use of their real property.

2. Limitations on use may not impinge on this principle except by exercise of the police power. This exercise must be reasonably related to the public health, safety, welfare and morals.

According full acceptance to the trial judge's findings of fact we cannot possibly see how a mobile home park vis-a-vis single family residences can possibly affect Grand Blanc Township's morals, health or safety on the land in question. Standards of sanitation, fire protection and other general health and safety requirements are imposed upon mobile home parks by statute. There is nothing of record to suggest that trailer parks create any greater "moral" problem (whatever that means) than any other type structure.

Thus we must equate the extremely difficult to define word "welfare" with the purpose of the Grand Blanc Township ordinance. The only "welfare" we can possibly see here is that Grand Blanc Township residents like single family residences better than they do trailer parks. Access roads and traffic problems would not ensue under the trial judge's findings. Whatever "master-plan" problems exist as between the permitted use and the non-permitted use do not appear of record.

We do not relish intruding judicial supervision into local governmental affairs. But the constitution of the republic and of this state require us to

tions, "master-plan" concepts, "larger community rights" theories to name only a few.

We could not even reduce chaos to disorder if we undertook to discuss them all decisionally.

when our jurisdiction is invoked. We do not see how we can refrain in the case at bar. We reverse and hold the ordinance in question to be constitutionally infirm as applied to plaintiff's property. No costs.

All concurred.